1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRYAN CAVE LEIGHTON PAISNER LLP**
Daniel T. Rockey, California Bar No. 178604
Merrit M. Jones, California Bar No. 209033
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4070
Telephone:    415 675 3400
Facsimile:    415 675 3434
daniel.rockey@bclplaw.com
merrit.jones@bclplaw.com

Attorneys for Defendants
Guardian Technologies LLC and Lasko Products LLC

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA FELICE, JUSTIN GARFIELD, and NICHOLAS POSTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GUARDIAN TECHNOLOGIES LLC and LASKO PRODUCTS LLC,<br><br>Defendant. | Case No. 3:23-CV-04685-MMC<br><br>Hon. Maxine Chesney<br><br>[CLASS ACTION]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6), AND TO STRIKE CLASS ALLEGATIONS PURSUANT TO FRCP 12(f); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Request for Judicial Notice; [Proposed] Order*<br><br>Date:    June 21, 2024<br>Time:    9:00 a.m.<br>Place:    Courtroom 7 – 19th Floor<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102<br><br>Date Action Filed: September 12, 2023 |

1    **PLEASE TAKE NOTICE THAT** on Friday, June 21, 2024, at 9:00 a.m., or as soon

2    thereafter as counsel may be heard in the above-entitled Court, located at Courtroom 7 – 19th

3    Floor at 450 Golden Gate Avenue in San Francisco, California, defendants Guardian

4    Technologies LLC and Lasko Products LLC ("Defendants") will and hereby move to dismiss the

5    First Amended Complaint ("FAC") of plaintiffs Lisa Felice, Justin Garfield and Nicholas Poston

6    ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), and to

7    strike the FAC's class allegations as to non-resident class members pursuant to FRCP 12(f).

8    Defendants move to dismiss the FAC for failure to state a claim on the grounds that,

9    despite being given an opportunity to amend, Plaintiffs' factual allegations, and the analysis of

10   their expert, do not demonstrate the falsity of any of the challenged representations on which they

11   allegedly relied. Nor do Plaintiffs make this showing with the requisite specificity required for

12   their CLRA and fraud claims. Similarly, Plaintiffs do not point to a false factual statement in

13   support of their breach of warranty claims. Defendants also move to strike the nationwide class

14   allegations pursuant to *Bristol-Myers Squibb Co. v. Sup. Ct. Cal*., 137 S.Ct. 1773 (2017), as the

15   Court lacks specific jurisdiction over the claims of non-resident putative class members whose

16   claims have no connection to California.

17   Defendants' Motion is based upon this Notice of Motion and Motion, the accompanying

18   Memorandum of Points and Authorities, and the Request for Judicial Notice filed herewith, the

19   pleadings and papers filed herein, and the argument of counsel at the time of the hearing.

20   Dated:  May 9, 2024                    **BRYAN CAVE LEIGHTON PAISNER LLP**

21

22                                         By:   */s/ Daniel Rockey*
                                                 Daniel Rockey
23                                         Attorneys for Defendants
                                           Guardian Technologies LLC and Lasko Products
24                                         LLC

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3    I.    Introduction ................................................................................................. 1

4    II.   Background.................................................................................................... 3

5          A.    The Parties, Products and Purchases........................................................ 3

6          B.    The Challenged Labeling and Advertising ............................................. 4

7          C.    Plaintiffs' Allegations as to the Products' Germ-Killing Properties ..... 7

8          D.    Plaintiffs' Class Allegations .................................................................... 8

9          E.    Procedural History ................................................................................... 8

10   III.  Legal Analysis .............................................................................................. 9

11         A.    Plaintiffs' Allegations Fail to State a Claim ........................................... 9

12         B.    The FAC Still Fails to Identify Any False or Misleading Statements, or
                  to Allege Facts Demonstrating Falsity.................................................... 9
13

14         C.    The FAC Fails to Meet The Heightened Pleading Standard of Rule
                  9(b) ......................................................................................................... 16
15
           D.    Plaintiffs' Fraud Claim Fails.................................................................. 17
16
           E.    Plaintiffs' Express Warranty Claim Fails .............................................. 19
17
           F.    The Nationwide Class Allegations Should Be Stricken ....................... 19
18
           G.    Plaintiffs' Claim for Punitive Damages Must Be Dismissed ............. 23
19   IV.   Conclusion.................................................................................................. 24

20

21

22

23

24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4

5 *In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), aff'd, 464

6 F. App'x 651 (9th Cir. 2011) ................................................................................................ 17

7 *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 9

8 *Becerra v. Dr. Pepper/Seven Up*,

9 945 F.3d 1225 (9th Cir. 2019) ............................................................................................ 10

10 *Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 9

11

12 *Bostick v. General Motors, LLC*
   (C.D. Cal., July 22, 2020, No. 519CV02451VAPSPX) 2020 WL 13283478 ...................... 22

13

14 *Bristol-Myers Squibb Co. v. Sup. Ct. Cal.*,
   137 S.Ct. 1773 (2017) ...................................................................................................*passim*

15 *Bugarin v. All Nippon Airways Co., Ltd.*
   (N.D. Cal. 2021) 513 F.Supp.3d 1172 ................................................................................ 21

16

17 *Carpenter v. PetSmart*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020) ........................................................................ 21, 23

18 *Carrea v. Dreyer's Grand Ice Cream, Inc.*,

19 475 F. App'x 113 (9th Cir. 2012) .................................................................................. 12, 15

20 *Chavez v. Church & Dwight Co.*,
   2018 WL 2238191 (N.D. Ill. May 16, 2018) ...................................................................... 22

21

22 *Chizniak v. CertainTeed Corp.*,
   No. 117CV1075FJSATB, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020).................................. 22

23 *Corbett v. PharmaCare U.S., Inc.*,
   567 F. Supp. 3d 1172 (S.D. Cal. 2021) .............................................................................. 19

24

25 *Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998)................................................................................................ 18

26

27 *In re Dental Supplies Antitrust Litig.*,
   No. 16CIV696BMCGRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)............................ 22

28

*Ebner v. Fresh*,
    838 F.3d 958 (9th Cir. 2016) ........................................................................ 10

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................... 12, 15

*Gil v. Bank of Am., N.A.*,
    138 Cal.App.4th 1371 (2006) ...................................................................... 16

*Harris v. McDonald's Corp.*,
    No. 20-cv-06533-RS, 2021WL 2172833 (N.D. Cal. Mar. 24, 2021) ............ 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................... 9, 18

*King v. Bumble Trading, Inc.*,
    No. 18-CV-06868-NC, 2020 WL 663741 (N.D. Cal. Feb. 11, 2020) ............ 20

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...................................................................... 10

*Lyngaas v. Ag*
    (6th Cir. 2021) 992 F.3d 412 ...................................................................... 20

*McDonnell v. Nature's Way Prod., LLC*,
    No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...................... 22

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) ...................................................................... 13

*Molock v. Whole Foods Market Group, Inc.*,
    952 F.3d 293 (D.C. Cir. 2020) .................................................................... 21

*Moore v. Trader Joe's Co.*,
    No. 19-16618, 2021 WL 2965445 (9th Cir. July 15, 2021) .......................... 10

*Mussat v. IQVIA, Inc.*
    (7th Cir. 2020) 953 F.3d 441 ...................................................................... 20

*Noohi v. Kraft Heinz Company*
    (C.D. Cal., July 20, 2020, No. CV1910658DSFSKX) 2020 WL 5554255 ........... 21

*Pelayo v. Nestle USA*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) .......................................................... 9

*Pilgrim v. General Motors Company*
    (C.D. Cal. 2019) 408 F.Supp.3d 1160 ......................................................... 22

*Rivera v. Invitation Homes, Inc.*
    (N.D. Cal., Oct. 29, 2020, No. 18-CV-03158-JSW) 2020 WL 8910882 ........... 22

iii

*Robie v. Trader Joe's Company*,
  No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ............................... 10

*Shaker v. Nature's Path Foods, Inc.*,
  No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ................... 10

*Stacker v. Intellisource, LLC*
  (D. Kan., June 28, 2021, No. 20-2581-JWB) 2021 WL 2646444 ......................................... 22

*Varela v. Walmart, Inc.*,
  No. 20-4448-GW-KSx, 2021 WL 8565989 (C.D. Cal. Mar. 23, 2021) ............................... 10

*Vess v. Ciba–Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 9, 16, 18

*Wenokur v. AXA Equitable Life Ins. Co.*,
  No. CV-17-00165-PHX-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ......................... 22

*Whiteside v. Kimberly-Clark Corp.*,
  2023 WL 4328175 (C.D. Cal. June 1, 2023) ...................................................................... 13

**Statutes**

Cal. Civ. Code § 1770(a)(5) .............................................................................................. 10

Cal. Civ. Code § 1770(a)(7) .............................................................................................. 10

Civ. Code § 1770(a)(9) ....................................................................................................... 10

**Other Authorities**

Rule 9(b) ........................................................................................................................... 9, 16

Rule 12(b)(6) .......................................................................................................................... 9

Rule 12(f) ............................................................................................................................. 19

1   **I.      INTRODUCTION**

2         This putative class action concerns GermGuardian Air Purifiers, which include an ultra-

3   violet-c ("UV-C") light designed to reduce airborne pathogens, in addition to a series of filters,

4   including a HEPA (High Efficiency Particulate Air) filter. Plaintiffs' initial Complaint in this matter

5   took issue with certain representations made by Defendants asserting that "Sanitizing UV-C Light

6   Reduces airborne germs and viruses," "UV-C Light Works with filters to kill germs and bacteria,"

7   and "More than just a filter, the UV-C light kills germs."[1] Although Plaintiffs acknowledged that

8   "Ultraviolet light has the potential to kill pathogens because it damages their DNA, RNA, and

9   proteins," that "COVID-19 is a particularly sensitive pathogen when it comes to UV-C radiation,"

10  and that UV-C light is effective in killing specific pathogens identified on Defendant's product

11  packaging,[2] they claimed the statements were misleading because the Plaintiffs "believed that the

12  UV-C bulb housed within the Product was capable of killing a material amount of bacteria, viruses

13  and mold *as they initially pass through the unit*...."[3] Defendants moved to dismiss, pointing to the

14  Product labeling and ad copy making clear that, used as intended, the Products are designed to

15  continuously recirculate the air to maximize their germ killing properties. The Court granted the

16  motion, agreeing with Defendants that "nowhere does [any] defendant claim that the germ-killing

17  benefits of UV-C accrue entirely during the initial pass through the unit."[4]

18        Plaintiffs have now amended their Complaint, attempting to remedy this fundamental flaw

19  by simply omitting the allegation that Plaintiffs believed the germ-killing benefits occurred entirely

20  on the initial pass through the unit. Plaintiffs now allege only that they "believed that the UV-C

21  bulb housed within the Product was capable of killing a material amount of microbes making it

22  more effective against these airborne pathogens than standard air purifiers which only have HEPA

23  filters."[5] But simply omitting the initial-pass theory from their allegations cannot cure this

24  deficiency because Plaintiffs continue to rely entirely on the very same analysis of their expert to

25  show falsity — analysis which is entirely dependent upon an assumption that air passes through the

26  _____

27  [1] Complaint, ¶¶37 -47.
    [2] *Id.*, ¶29, ¶33, ¶58.

28  [3] Complaint, ¶7 (Felice), ¶8 (Poston), ¶9 (Garfield) (emphasis added).
    [4] April 4, 2024 Order ("Order"), pp. 12:7-26.
    [5] FAC, , ¶7 (Felice), ¶8 (Poston), ¶9 (Garfield).

**1**

1   unit only once.

2        As this Court previously recognized, that analysis ignores the intended use of the Product

3   clearly disclosed on the Product packaging and ad copy and is thus aimed at a representation which

4   Plaintiffs previously presumed Defendants made, but did not. In the absence of allegations that

5   Defendants claimed that the full germ-killing properties were achieved in a single pass, that analysis

6   is irrelevant and cannot support their claims.

7        Also significant, although Plaintiffs' beliefs are focused on whether the Products kill a

8   "material amount" of microbes, that is not what Plaintiffs' expert assessed. Rather, he determined,

9   apparently arbitrarily, that in order to be effective, a product must kill 90% of all pathogens in a

10   single pass. But again, as this Court held in dismissing the Plaintiffs' claims for failure to identify

11   a false factual statement, nowhere do Defendants make such a claim — only that the Products are

12   capable of reducing/killing airborne pathogens. As to those claims, Plaintiffs' own expert's analysis

13   not only does not undermine the challenged representations — it substantiates them.

14        In addition, despite an opportunity to amend, Plaintiffs still fail to make an adequate

15   "showing of a causal connection or reliance on the alleged misrepresentation."[6] Although Plaintiffs

16   now allege for the first time that they read and relied upon certain claims on Amazon in purchasing

17   the Products, those claims do not state that the Products' UV-C light kills 90% pathogens in a single

18   pass — or even that it provides germ-killing benefits beyond that provided by the HEPA filter

19   alone. *Id.* ¶¶ 39-43. Plaintiffs do not allege that they read and relied upon the other challenged

20   representations, including those on Defendants' website and the Products' packaging. *Id.* ¶¶ 45-53.

21   But even if they had, as explained above, the specific facts they allege to show falsity — their

22   expert analysis — in no way undermine those representations.

23        As explained more fully below, each of Plaintiffs' claims suffer from additional defects. In

24   addition, Plaintiffs' putative nationwide class claims should be stricken under *Bristol-Myers Squibb*

25   *Co. v. Sup. Ct. Cal.*, 137 S.Ct. 1773 (2017) and their claim for punitive damages should be stricken

26   as well. At bottom, however, the FAC fails because, even assuming the truth of Plaintiff's factual

27   allegations, they do not show that any claim actually made by Defendants is false or would mislead

28   ───────────────────────

[6]        Order, 6:16-19, quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 at 326.

a reasonable consumer. Plaintiffs' claims should therefore be dismissed; this time with prejudice.

## II.    BACKGROUND

### A.    The Parties, Products and Purchases

Plaintiffs Lisa Felice, Justin Garfield, and Nicholas Poston ("Plaintiffs") challenge claims made by defendants Guardian Technologies LLC and Lasko Products LLC ("Defendants")[7] concerning GermGuardian Air Purifiers that include a UV-C light, in addition to a HEPA filter, which includes the AC4300 and AC4825 series, and UV-C replacement bulbs. Felice alleges that she purchased the GermGuardian AC4825DLX 3-in-1 Air Cleaning Air Purifier from Amazon in April 2022 for $89.99. FAC ¶ 7. Poston alleges that he purchased the GermGuardian AC4825E 4-in-1 Air Cleaning Air Purifier from Amazon in January 2023 for $99.99. *Id.* ¶ 8. Garfield alleges that he purchased the GermGuardian AC4825E 4-in-1 Air Cleaning Air Purifier from Amazon in November 2022 for $64.99, and that as part of the same order he also purchased the GermGuardian AC4825E 4-in-1 Air Cleaning Air Purifier for $129.89. *Id.* ¶ 9. None of the named Plaintiffs claim to have purchased the GermGuardian AC4300 or AC4825W models. *Id.* ¶¶ 7-9.

Plaintiffs each broadly allege that they "reviewed the Product's Amazon page and relied on Defendants' warranties and representations about the Product's antimicrobial capabilities prior to purchasing the Product." *Id.* ¶ 7-9. In the initial Complaint, Plaintiffs each alleged that they believed the UV-C bulbs in the Products were capable of killing a "material amount" of microbes "as they initially passed through the unit," making them more effective than air purifiers that only have HEPA filters. Compl. ¶¶ 7-9. In the FAC, Plaintiffs now allege a different understanding, omitting the "initial pass through" qualification of the UV-C bulbs' capabilities, and asserting that they "reasonably relied on Defendants' representations and believed that the UV-C bulb housed within the Product was capable of killing a material amount of microbes making it more effective against these airborne pathogens than standard air purifiers which only have HEPA filters." FAC ¶¶ 7-9. Plaintiffs further allege that, absent their belief as to the UV-C light's germ-killing capabilities,

---

[7] Defendant Guardian Technologies LLC ("Guardian") is a limited liability company organized under Delaware law, with its principal place of business in Euclid Ohio. *Id.* ¶ 10.  Defendant Lasko Products, LLC ("Lasko") is a Pennsylvania limited liability company with its principal place of business in West Chester, Pennsylvania. *Id.* ¶ 11.

they would not have purchased the Products or would have paid "substantially less" for them. *Id.*

**B.     The Challenged Labeling and Advertising**

<u>**Plaintiffs' new Amazon claims:**</u> The initial Complaint included images of what were presented as product labels or ad copy, without identifying the source of the images or identifying any particular label, ad, or representation upon which the Plaintiffs claim to have relied.  In contrast, the FAC now claims that rather than relying on product packaging or ad copy, Plaintiffs broadly relied upon Amazon pages and graphics which were never identified in the Complaint, which either predate their purchases by nearly two years or post-date those purchases, and include pages for Products they never purchased. For example, the FAC includes Amazon web pages for the GermGuardian AC4825E[8] from March 2021 (which preceded the Plaintiffs' purchases by up to 22 months) and January 2023 — which post-dates Felice and Garfield's purchases, and therefore could not have been relied upon prior to purchase. The web pages state: "Kills germs: UV-C light helps kill airborne viruses such as influenza, staph, rhinovirus." *Id.* ¶ 39. The FAC also includes new graphics, purportedly from the same web pages, stating, "UV-C LIGHT Kills airborne germs & viruses," with an illustration of germs, stating "UV-C Fights Germs UV-C light helps reduce airborne bacteria, viruses, mold spores* . . ." *Id.* ¶¶ 41-43.[9]

Plaintiffs each allege that they read and relied upon these claims in purchasing the Products and interpreted them to mean "that the Product's UV-C bulb would 'kill germs' and would provide a material antimicrobial benefit over that provided by a HEPA filter alone." *Id.* ¶¶ 40, 44. Notably, these are the *only* claims that Plaintiffs allege they **actually** encountered, read and relied upon in purchasing the Products. *See generally* FAC. Also notable is the fact that these claims do not state that the UV-C light kills more germs than a HEPA filter alone.

Both the Complaint and FAC include another graphic, allegedly from the January 2023 Amazon page, labeled "3-Stage Filtration,"[10] however, Plaintiffs do not allege that they

---

[8] Plaintiffs allege that the advertising and marketing of the GermGuardian AC4300BPTCA across all retailers featured virtually identical images and statements that were read and relied upon by Plaintiff Garfield in making his purchase. *Id.* fn. 6, ¶ 40.
[9] The disclosure states: "*Tested with Staphylococcus Albus, and Escherichia Coli. & Phi-X174." *Id.*
[10] The graphic states "**UV-C LIGHT** Helps reduce airborne bacteria, viruses and mold spores.*" The graphic includes the further detail "*Tested with Staphylococcus Albus, and Escherichia

4

encountered, read and relied upon this graphic or the claims therein. *Id.* Nor would such a claim be plausible as to Felice and Garfield, whose purchases predate this graphic. *Id.* ¶¶ 7, 9

**The website claims:** The FAC also includes claims alleged to have come from various versions of Defendants' website, mostly from 2019 or 2020, but Plaintiffs **do not** allege that they went to Defendants' website, encountered, and read and relied on these claims in purchasing the Products. Nor would such allegations be plausible, since the following website claims all predate Plaintiffs' purchases by at least two years:

> "UV-C light helps reduce airborne viruses such as influenza, staph, rhinovirus." *Id.* ¶ 49 (unspecified date)

> "The Power of UV-C light kills bacteria and viruses." *Id.* ¶ 50 (unspecified date).

> "More than just a filter, the UV-C light kills germs" *Id.* ¶ 51 (2019).

> "Using powerful and safe UV light technology, our air purifiers kill airborne bacteria." *Id.*

> "GermGuardian AC4825 4-in-1 Air Purifier with HEPA Filter, UV
> Sanitizer and Odor Reduction, 22-Inch Tower" *Id.* ¶ 53 (2020).

> "UV-C Light Works with filters to kill germs and bacteria" *Id.* (2020).

> "UV-C Kills Airborne Mold & Germs" *Id.* (2020).

> "What is UV-C light?
> UV-C is part of the ultra-violet light spectrum that is filtered out by the
> earth's atmosphere. The "C" stands for the particular frequency of UV light
> that kills germs." *Id.* (2020).

> "UV-C light is highly effective at penetrating thin-walled germs like
> viruses and bacteria. The light alters the genetic structure of the germ, and
> they die." *Id.* (2020).

**The packaging claims**: Both the Complaint and FAC additionally include the following graphic from the product packaging, which the FAC alleges appears both on the Amazon pages and the Products' physical packaging, and states that "UV-C light goes beyond filtration to kill germs" and "destroys the DNA of germs eliminating their ability to reproduce." *Id.* ¶ 45.

---

Coli, Aspergillus Niger, and Phi-X174." *Id.* Plaintiffs allege that these pathogens require significantly greater UV Doses to be inactivated than what is required for COVID-19. *Id.* ¶ 48.

5

Once again, however, Plaintiffs **do not** allege that they encountered, read and relied upon these claims in purchasing the Products. *Id.* Nor would such an allegation be credible as to the packaging claims, since Plaintiffs would not have seen the packaging until **after** the Products were delivered.

Notably, although the FAC purports to show the packaging for the Products, Plaintiffs conspicuously omit the remainder of that packaging which makes clear that, contrary to the assumptions employed by Plaintiff's expert in an attempt to demonstrate falsity of the claims, when used as intended, the Products are expected to continuously recirculate the air in a room.[11] For example, the label for the AC4825DLX, purchased by Felice, states that it "circulates room air 4.8x per hour" based on the recommended room size of 153 square feet. RJN, Ex. A. The label for the 4825E, purchased by Poston and Garfield, similarly states that it "Circulates and filters air in a 153 square foot room every 12.5 minutes." RJN, Ex. B. These claims are consistent with the claims in the archived 2020 version of GermGuardian's website cited in the FAC, which states that the Product "is best used for rooms up to 167 sq. feet. Filters and circulates room air over 4x per hour."

---

[11] By way of its separately filed Request for Judicial Notice ("RJN"), Defendant seeks judicial notice of the complete labels for the GermGuardian AC4825DLX and AC4825E, the two products Plaintiffs claim to have purchased.

Defendants' Motion to Dismiss/Strike Case
No. 3:23-Cv-04685-MMC

FAC ¶ 53.[12] In stark contrast with the analysis of Plaintiff's expert, none of the labels, advertising, or web pages claim that the Products capture or kill more than 90% of pathogens as air initially passes through the units.

###### C.   Plaintiffs' Allegations as to the Products' Germ-Killing Properties

Plaintiffs acknowledge that the Products include a HEPA filter that effectively removes 99.97% of germs and microbial particles. FAC ¶¶ 20, 23, 52. Plaintiffs further concede that "Ultraviolet light has the potential to kill pathogens because it damages their DNA, RNA, and proteins," that "COVID-19 is a particularly sensitive pathogen when it comes to UV-C radiation," and that UV-C light is effective in killing specific pathogens identified in Defendant's product packaging. *Id*., ¶¶ 29, 33, 65. Indeed, Plaintiffs even include a table showing Plaintiffs' expert's assessment of how much UV-C light is necessary to kill various pathogens, though they also concede that "[m]easuring viral inactivation with UV-C light is a difficult task, and the scientific community has yet to come to a true consensus as to the UV Dose required." *Id.* ¶ 65, ¶31, n. 3. Nevertheless, Plaintiffs claim that "Defendants' representations that the UV-C bulb in the Products is capable of providing any material germ 'killing' or 'reduction' benefits are demonstrably false." FAC ¶ 59. As demonstrated below, they make this conclusory assertion without any supporting factual allegations, since their sole factual support, the analysis of their expert, James Malley, PhD, relies on an assumption that air does not recirculate through the Products – an assumption that is directly contrary to the explicit representations on the Products' packaging.

According to Plaintiffs, "there are three factors which determine how effective a UV-C device can be at inactivating pathogens: the wavelength of UV-light emitted, the amount of UV-light emitted at once, and how long a pathogen will be exposed to the light as it passes through the product," *Id.*, ¶ 31. They admit that the Products' "wavelength is right," but claim that "the amount of radiation and the time exposed to radiation are both too low." *Id.* Plaintiffs allege that Dr. Malley evaluated one of the Products, the GermGuardian AC4825E, calculating the "UV Dose" by

---

[12] Plaintiffs provide the following link to the Wayback Machine online archive at https://web.archive.org/web/20200801301 1/https://www.guardiantechnologies.com/ac4825-3-in-1-air-cleaning-system-with-true-hepa-uv-c-sanitizer-and-odor-reduction-22-inch-tower-by-germguardian.html

measuring the Irradiance of the bulb and multiplying that by the "residence time," determined as "the volume of the reaction chamber divided by the volumetric flowrate of the media being treated." *Id.*, ¶¶ 62-67. Malley compared those results with what he contends are the "approximate UV Doses to be neutralized at a rate of 90% (meaning, 10% of pathogens survive the exposure), and found that the UV Dose "was 0.93 mJ/cm2 inside the Upper Chamber with the fans on their lowest setting," which is just under "half of the 2 mJ/cm2 required to neutralize 90% of SARS-CoV-2 (COVID-19) particles," and was 0.43 mJ/cm2 at the maximum flow rate. *Id.*, ¶72, ¶67. Based on these results, he concluded that "UV microbial inactivation aspects" of the Product "would result in overall performance that would provide no significant inactivation of viruses, bacteria or mold." *Id.*, ¶ 69. It is important to note, however, that this conclusion is premised upon a methodology that measures exposure in a single pass through the Products, ignoring the benefits of recirculation and multiple exposures.

### D.    Plaintiffs' Class Allegations

Plaintiffs seek to certify a nationwide class of all U.S. consumers who purchased a GermGuardian AC4825E, AC4825W, AC4825DLX, AC4300, or replacement bulbs for those products during the applicable statutory period, as well as a California subclass of all California consumers of the same products during the applicable statutory period. *Id.* ¶¶ 82, 83.

### E.    Procedural History

On April 4, 2024, this Court granted Defendants' prior motion to dismiss the Complaint, holding that Plaintiffs had satisfied Article III and statutory standing requirements, *id.* at pp. 4-6, but failed to identify a false statement of fact in support of their claims, which were based upon Plaintiffs' purported assumption that the touted germ-killing properties of the UV-C light were limited to the initial pass of air and pathogens through the unit – a claim that Defendants did not make. *Id.* at pp. 11-12. On that basis, the Court granted Defendants' motion to dismiss as to all of Plaintiffs' claims, with leave to amend. *Id.* at pp. 11-15.

The Court further held that Plaintiffs did not "identify which statements they saw and relied on when making their purchasing decisions," let alone to satisfy the heightened pleading requirements of Rule 9(b), subjecting their fraud and consumer protection law claims to dismissal.

*Id.* at pp. 13-14. Similarly, the Court also held that Plaintiffs did not "identify any fact or promise made by defendants, or description provided by them," in support of their breach of warranty claim, subjecting that claim to dismissal as well. *Id.* at pp. 14-15.

As the Court granted Defendants' motion as to all of Plaintiffs' claims and causes of action, it did not consider or address Defendants' arguments that the Court lacks personal jurisdiction over Plaintiffs' claims as to non-resident class members. *Id.* at fn. 7. On April 25, 2024, Plaintiffs filed the FAC asserting causes of action for violation of the Consumer Legal Remedies Act, Civ. Code §§ 1750, *et seq.*, fraud, and breach of express warranty.

## III.    LEGAL ANALYSIS

### A.    Plaintiffs' Allegations Fail to State a Claim

Despite being given an opportunity to amend, Plaintiffs' FAC fails to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Pelayo v. Nestle USA*, 989 F. Supp. 2d 973, 977 (C.D. Cal. 2013). And detailed factual allegations are not required, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. *Iqbal*, 556 U.S. at 678. Claims sounding in fraud, such as the CLRA and the fraud claim asserted here, also must satisfy Rule 9(b)'s heightened particularity standard. *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The plaintiff must plead "the who, what, when, where, and how of the misconduct charged," as well as facts showing that Defendant knew the statement was false when made. *Id.* at 1106; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### B.    The FAC Still Fails to Identify Any False or Misleading Statements, or to Allege Facts Demonstrating Falsity

First and most fundamentally, each of Plaintiffs' causes of action still fail because Plaintiffs fail to identify any false or misleading statement, as required to state a claim for Plaintiffs'

remaining causes of action for fraud and violation of the CLRA.[13] A statement is deceptive or misleading if it is likely to deceive an ordinary consumer. *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Moore v. Trader Joe's Co.*, No. 19-16618, 2021 WL 2965445 (9th Cir. July 15, 2021). In *Moore*, the Ninth Circuit explained:

> This is not a negligible burden. To meet this standard, Plaintiff must demonstrate 'more than a mere possibility that the seller's [representations] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner ... rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Id.* (int. quot. and cit. omitted); *see also Becerra v. Dr. Pepper/Seven Up*, 945 F.3d 1225, 1228 (9th Cir. 2019) (same). "[A] plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore*, 2021 WL 2965445 at *4; *see also Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (plaintiff cannot proceed "simply by asserting her own belief and conclusions about consumers' beliefs").[14]

This Court previously held that Plaintiffs had failed to identify any false or misleading statement, as Plaintiffs alleged they believed that the UV-C light would kill a material amount of pathogens as air "initially passes through" the unit while Defendants had not made that claim. Order, pp. 12-13. Although Plaintiffs have shifted their interpretation of the challenged

---

[13] The CLRA defines various "unfair methods of competition and unfair or deceptive acts or practices," such as "[r]epresenting that goods ... have ... characteristics [or] ... benefits ... that they do not have[,]" see Cal. Civ. Code § 1770(a)(5), "[r]epresenting that goods ... are of a particular standard, quality, or grade ... if they are of another," see Cal. Civ. Code § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised." Civ. Code § 1770(a)(9).

[14] Courts regularly dismiss CLRA claims where the plaintiff fails to plausibly allege the product label would be deceptive or misleading to a reasonable consumer. *See, e.g., Becerra v. Dr. Pepper Seven Up, Inc.*, 945 F.3d 1225, 1228-31 (9th Cir. 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016); *Robie*, 2021 WL 2548960, at *5; *Varela v. Walmart, Inc.*, No. 20-4448-GW-KSx, 2021 WL 8565989, at *4 (C.D. Cal. Mar. 23, 2021); *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW(OPx), 2013 WL 6729802, at *3 (C.D. Cal. Dec. 16, 2013) ("where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging dismissal is appropriate").

1  representations, and now omit the "initial pass-through" qualification, this tactic cannot resurrect

2  their fundamentally flawed claims.

3  As an initial but important matter, Plaintiffs' shifting allegations concerning their

4  understanding and interpretation of the challenged statements calls into question the plausibility of

5  their actual reliance on these statements. The Court can take notice of the fact that amended

6  allegations contradict those in prior pleadings, and either disregard or "need not accept as true" the

7  subsequent inconsistent allegations. *Bank of New York Mellon v. Citibank,* 8 Cal.App.5th 935, 943

8  (2017) (disregarding conclusory repudiation of agency relationship in amended complaint that was

9  inconsistent with prior allegation); *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th

10  1443, 1447 (2001) (inconsistent allegations in amended complaint are disregarded unless the

11  inconsistency is explained); Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management,

12  Inc. (9th Cir. 2014) 744 F.3d 595, 600 ("A party cannot amend pleadings to "directly contradic[t]

13  an earlier assertion made in the same proceeding."); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th

14  Cir.1990). Plaintiffs' interpretation of the statements they seek to challenge is foundational to their

15  claims. That Plaintiffs now assert that they had a different understanding of those statements

16  removes the foundation and topples their claims like a house of cards.

17  Second, Plaintiffs' allegations still fail to identify a material misrepresentation and therefore

18  fail to state a claim. Even if Plaintiff's newly adopted beliefs are deemed true, Plaintiffs' factual

19  allegations do not demonstrate that any of the challenged statements are false. Importantly, the ***only***

20  statements at issue here are those in the Amazon web pages for the Products — Plaintiffs do not

21  allege that they read and relied on any of the other statements in purchasing the Products.[15]

22  Vague, conclusory assertions that a product is "ineffective," or that a statement is

23  "misleading," will not suffice. Plaintiffs must allege specific facts demonstrating falsity. Here, the

24  only specific facts alleged by Plaintiffs is the analysis of their expert, Dr. Malley. In conducting

25  that analysis, Malley does not actually test whether the Products kill pathogens. Rather, he measures

26  the Irradiance of the bulb and the time it takes for a particle to flow through the chamber, multiples

27

28

---

[15] Even if Plaintiffs had reviewed the other statements in the FAC, none of the challenged statements – for instance, that the "UV-C light helps kill airborne viruses" or "goes beyond filtration to kill germs" are proven false by Plaintiffs' allegations.

those two numbers to get a UV Dose, and then compares that number to what he claims are the UV Dose levels necessary to eradicate 90% of a given pathogen in a single exposure. FAC, ¶62-67. Malley does not explain why he thinks a single pass-through approach is appropriate in analyzing a product for which the intended use involves the continuous recirculation of air — as opposed to, for example, a non-recirculating water purification system that relies upon only a single pass through an irradiation chamber — and no explanation appears. *Id.* This omission is particularly puzzling because the labels for the Products make clear that when used as intended, the Products are expected to "circulate[] room air 4.8x per hour" based on the recommended room size of 153 square feet, or  "every 12.5 minutes." RJN, Exs. A, B; *see also* Compl., ¶ 47, n. 7 (archived 2020 version of GermGuardian's website stating that Product "is best used for rooms up to 167 sq. feet. Filters and circulates room air over 4x per hour.").[16] And although Plaintiffs might have claimed in response to Defendants' initial motion to dismiss that Malley's failure to tailor his analysis to address the intended use of product was inadvertent, the fact that Plaintiffs continue to rely upon Malley's flawed methodology in their FAC makes clear that his narrow circumscription of that analysis was a strategic calculation, not an oversight.

The "reasonable consumer" test requires viewing a product label in its entirety; not claims in isolation. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("Any persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes."); *Carrea v. Dreyer's Grand Ice Cream, Inc*., 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of CLRA, FAL, and UCL claims and rejecting the plaintiff's attempt to interpret words on a product's label out of context); *Hairston v. S. Beach Beverage Co., Inc.* (C.D. Cal. May 18, 2012), No. CV 12-1429-JFW, 2012 WL 1893818, at *13 (rejecting plaintiff's claims based on "selective interpretation of individual words or phrases"); *Moore v. Trader Joe's Co* (9th Cir. 2021) 4 F.4[th] 874, 876-77 ("100% New Zealand Manuka Honey," read in context, was not likely to

---

[16] Plaintiffs provide the following link to the Wayback Machine online archive at https://web.archive.org/web/20200801301l/https://www.guardiantechnologies.com/ac4825-3-in-1-air-cleaning-system-with-true-hepa-uv-c-sanitizer-and-odor-reduction-22-inch-tower-by-germguardian.html

1    deceive a reasonable consumer into believing product contained only honey from Manuka flower).

2    A label cannot be considered deceptive if "[u]pon seeing the back labels, [the product feature at

3    issue] would be clear to a reasonable consumer." *McGinity v. Procter & Gamble Co.*, 69 F.4th

4    1093, 1098 (9th Cir. 2023); *Whiteside v. Kimberly-Clark Corp.*, 2023 WL 4328175, at *4 (C.D.

5    Cal. June 1, 2023) (Plaintiff "cannot simply look to the statement on the front panel, ignore the

6    asterisk, and claim [he] has been misled."). Here, the labels and ad copy make clear that the

7    Products are intended to regularly recirculate the air in a room several times per hour. It would be

8    unreasonable for a consumer, and is therefore unreasonable for Malley, viewing the claims in

9    context and as whole, to presume that Defendants were claiming the full germ-killing properties of

10    the UV-C are realized in a single initial pass through the Products.

11    Plaintiffs appear to recognize this weakness in Malley's analysis, preemptively conceding

12    that "Defendants may argue that the Products function as advertised because the air just needs to

13    be recirculated multiple times and eventually every pathogen is neutralized." *Id.*, ¶ 80. Plaintiffs

14    characterize that argument as "nonsensical on its face," positing that "the air in a room would have

15    to be recirculated through the Products many times to only theoretically inactivate a material

16    number of pathogens. This would take many hours, during which time an occupant in the room

17    could be exposed to a pathogen that has yet to be inactivated by the UV light." *Id.* But Plaintiffs'

18    own allegations make clear that is not true. Plaintiff's own expert concluded that the UV-Dose from

19    a single pass was nearly half of the dose required to eradicate 90% of the COVID virus, for example,

20    suggesting that slightly more than two passes would be required to wipe out nearly all of the present

21    COVID viruses. The Product labels make clear they are recommended for use in a room

22    approximately 153 square feet, in which case, the air would be recirculated every 12.5 minutes, or

23    4.8x times per hour, at the maximum setting. Thus, their own expert's analysis and assumptions

24    suggest that the Products would eradicate at least 90% of COVID viruses in less than an hour in a

25    153 sq. ft. room (and only slightly longer to eradicate 90% of *Escherichia coli*, *Staphylococcus*,

26    and common influenza strains). *Id.* ¶ 65.[17] But even if Plaintiffs were to claim that for some reason

27    

28    [17] Malley estimates that 90% of COVID, for example, would be eradicated at a UV-C dose of 2 mJ/cm2, while the Products produce 0.43 mJ/cm2 at the maximum flow rate. Assuming 4.8x/hr, his analysis suggests a lethal dose would be delivered in just under an hour.

the math doesn't add up, it is unnecessary for the Court to adopt such precise calculations for Defendants to prevail on their motion. Plaintiffs bear the burden of alleging specific facts demonstrating that a reasonable consumer would be misled by Defendants' representations and the only specific facts alleged here —Malley's analysis — squarely take aim at a representation Defendants never made. Defendants claim that the UV-C "[r]educes airborne germs and viruses," "helps reduce airborne viruses …" and "goes beyond filtration to kill germs." Plaintiffs' own analysis not only fails to undermine these claims, it appears to substantiate them.

Plaintiffs' expert's analysis misfires for yet another reason. The gravamen of Plaintiffs' claims is their contention that the UV-C bulb does not "provid[] any *material* germ 'killing' or 'reduction' benefits." *Id*. ¶¶ 7-9 (emphasis added). But Plaintiffs' expert analysis is not aimed at assessing whether a "material" number of pathogens are eradicated. Rather, he assumes that the only "acceptable" level of performance is the eradication of 90% of pathogens in a single pass. Plaintiffs do not explain why 90% eradication is the bar for materiality and Plaintiffs allege no facts indicating that eradication of 89%, 80%, or 70% of pathogens would be immaterial to a reasonable consumer.[18] More to the point, nowhere do Defendants make any claims about eradicating 90% of pathogens, in a single pass or otherwise. Also implicit in Malley's analysis is that he is calculating the average exposure based on the volume of the irradiation chamber; an approach that ignores the impact of a pathogen's proximity to the UV-C bulb in assessing potential lethality, despite broad recognition that the lethality of UV-C irradiance varies by distance.[19] Put differently, his analysis does not take into account the percentage of pathogens which pass more closely than the average to the bulb and therefore receive a larger dose of irradiation than his average estimate.

Further undermining that analysis, Malley also fails entirely to acknowledge that the

---

[18] Plaintiffs allege at ¶78 that based on claims about hand sanitizer, "[i]n the antimicrobial context, consumers expect at least 99.9% efficiency," but Defendants never make any claim to that effect and Plaintiffs cannot put words in Defendants' mouths by pointing to an entirely different product, using an entirely different antimicrobial mechanism.

[19] *See, e.g.*, *Impact of Room Location on UV-C Irradiance and UV-C Dosage and Antimicrobial Effect Delivered by a Mobile UV-C Light Device*, ("[S]ignificant differences in irradiance levels are achieved when sensors are placed at various distances and orientations relative to light emitted from the device."), at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4890342/ The foregoing study is cited not for the truth to the statements therein, but simply to illuminate the significance of implicit assumptions in Plaintiffs' expert's analysis.

14

marketing materials identified in the Complaint make clear that the Products Plaintiffs purchased, and the one tested by their expert, employ a dual-mechanism approach to reducing pathogens, combining UV-C light with the photocatalytic, germ-killing properties of titanium dioxide. For example, the 2020 web page for the AC4825 cited in the FAC states that "UV-C light technology works with Titanium Dioxide to reduce airborne bacteria, viruses, germs and mold spores." FAC, ¶ 45; *see also* RJN, Ex. A ("Titanium dioxide combines with the UV-C helping to reduce volatile organic compounds that pass through the unit."). Although numerous studies have shown that the germicidal properties of titanium dioxide coated materials are enhanced by exposure to ultraviolet light,[20] neither Plaintiffs nor their expert consider the synergistic effect of combining these germ-killing agents in evaluating Defendant's claims of efficacy. Plaintiffs cannot evaluate a claim in isolation while ignoring companion claims, where the labeling and ad copy make clear that the claims are related and interdependent. *Freeman*, 68 F.3d at 289; *Carrea*, 475 F. App'x at 115.

As the foregoing shows, the sole factual allegations that Defendants' claims are false relies on an unreasonable interpretation of those claims – that the UV-C light provides germ-killing benefits beyond what the HEPA filter provides – but also relies on factual allegations that do not demonstrate the claims to be false, but instead, if anything, appear to substantiate Defendants' claims. To maintain their claims, Plaintiffs must show that the product representations that Defendant actually made, reasonably construed, were false or misleading. Plaintiffs fail to make such a showing. As a result, their remaining causes of action for violation of the CLRA, fraud, and breach of express warranty all fail as a matter of law and should be dismissed.

---

[20] *See,* RJN, Ex. D ["*Titanium and ultraviolet light powerful combination against SARS-CoV-2 virus,*" at https://www.unr.edu/nevada-today/news/2021/covid-disinfectant ("Research to control and mitigate SARS-CoV-2 particles that linger on surfaces has shown that titanium oxide coated materials subjected to ultraviolent light can be highly effective in killing the virus, according to a study at the University of Nevada, Reno.")]; Ex. E ["*Photocatalytic disinfection using titanium dioxide: spectrum and mechanism of antimicrobial activity,*" accessed at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7079867/ ("Photocatalytic "activity [of titanium dioxide] has been shown to be capable of killing a wide range of Gram-negative and Gram-positive bacteria, filamentous and unicellular fungi, algae, protozoa, mammalian viruses and bacteriophage.")]; Ex. F "*Broad Spectrum Microbicidal Activity of Photocatalysis by TiO2,*" at https://www.mdpi.com/2073-4344/3/1/310 . Defendant requests that the Court take judicial notice of the *existence* of such studies, not their truth.

1

### C.    The FAC Fails to Meet The Heightened Pleading Standard of Rule 9(b)

Plaintiffs' CLRA and fraud[21] claims fail for additional reasons. Both claims must meet the heightened Rule 9(b) pleading standard to show the "the who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Conclusory allegations are insufficient, and the facts . . . must be alleged with specificity." *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1097 (C.D. Cal. 2012). As the Court noted in its Order dismissing Plaintiffs' claims, "[t]here is no dispute that Rule 9(b) applies" to both of these claims. Order, fn. 8. *See also Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to [alleged] violations of the CLRA and UCL")

This Court, in granting Defendants' prior motion to dismiss, held that "plaintiffs do not, contrary to their argument, identify the particular statement(s) each read or heard before making his or her purchase and that bore on such decision, a deficiency fatal to plaintiffs' claims." Order, 13:21-14:1. That is still the case. Importantly, the only statements that Plaintiffs allege even generally that they "read and relied upon" – and therefore the only statements placed at issue -- are those in the Amazon web pages. FAC ¶¶ 40, 44. As to those statements, Plaintiffs do not specifically allege when they read or encountered them, or most importantly, why those statements were material to their decisions to purchase the Products. *Id.* That is insufficient to survive dismissal.

As this Court further recognized in granting Defendants' prior motion, "'courts in this [C]ircuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify when statements the plaintiff actually saw and relied upon,' *see In re Arris Cable Modem Consumer Litig.,* No. 17-cv-01834, 2018 WL 288085, at *8 (N.D. Cal. Jan. 1, 2018); *see also, e.g., Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (holding plaintiff failed to state claims under UCL, FAL and CLRA where "[p]laintiff identifie[d] a number of representations made by [defendant]" but "fail[ed] to provide the particulars of her own experience reviewing or relying upon any of those statements" and did not

---

[21]    "The elements of fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am., N.A.*, 138 Cal.App.4th 1371, 1381 (2006).

1  "specify when she was exposed to the statements or which ones she found **material to her decisions**

2  to purchase [the product]"). Order, 14:1-11, emphasis added.[22]

3      Plaintiffs' rote allegations here that they "read and relied upon" the Amazon web page

4  statements still does not satisfy this heightened Rule 9(b) pleading requirement; particularly where,

5  as here, the Amazon pages pre-dated Plaintiffs' purchases by nearly two years or post-dated those

6  purchases. And even if Plaintiffs had met this requirement, their factual allegations, even if deemed

7  to be true, do not demonstrate any of the Amazon web page statements to be false.

8      **D.**    **Plaintiffs' Fraud Claim Fails**

9      Despite an opportunity to amend, Plaintiffs still fail to state a viable claim for fraud, which

10  requires "an intentional misrepresentation, deceit, or concealment of a material fact known to the

11  defendant with the intention on the part of the defendant of thereby depriving a person of property

12  or legal rights or otherwise causing injury." Cal. Civ. Code, § 3294(c)(3). To sufficiently plead

13  fraud under California law, a plaintiff must plead (1) a false factual statement, (2) knowledge of

14  falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Khan*

15  *v.CitiMortgage, Inc.*, 975 F. Supp. 2d 1127 (E.D. Cal. 2013). There must be a showing that the

16  defendant intended "to induce the plaintiff to act to his detriment in reliance upon the false

17  representation" and "that the plaintiff actually and justifiably relied upon the defendant's

18  misrepresentation in acting to his detriment." *Id.* at 1139. The absence of any of the required

19  elements is fatal to the claim. *Id.* Plaintiffs have failed to satisfy these requirements.

20      Importantly, a plaintiff must point to a factual statement that is "actually false," not merely

21  likely to be misleading. *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648,

22

23  [22] Numerous other courts have dismissed claims where the plaintiff did not "specify when she was exposed to the statements or which ones she found material to her decisions to purchase."

24  *Pirozzi v. Apple Inc.* (N.D. Cal. 2012) 913 F.Supp.2d 840, 850 (N.D. Cal. 2012); *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-cv-1345, 2021 WL 822721, at *4-5 (S.D. Cal. Jan.

25  22, 2021) (Rule 9(b) requires that the Plaintiffs sufficiently plead "'what' [they] actually viewed and read" and "actual reliance" on the specifically identified advertising statements); *Frenzel v.

26  AliphCom*, 76 F. Supp. 3d 999, 1013-14 (N.D. Cal. 2014) (dismissing UCL, FAL and CLRA claims where plaintiff failed to allege "with sufficient detail what representations he reviewed,

27  when he first reviewed them, or which ones he relied on in deciding to purchase [the product at issue]"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *11 (N.D.

28  Cal. June 5, 2009) ("Merely stating that a purchaser [read] a statement and then purchased a product in a particular year is not sufficient" to meet Rule 9(b)'s specificity requirements.).

at *7 (N.D. Cal. Nov. 6, 2009), aff'd, 464 F. App'x 651 (9th Cir. 2011). See also D*ay v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998) ("a fraudulent deception must be actually false"). As demonstrated above, even if all of Plaintiffs factual allegations are accepted as true, they still do not demonstrate any of the challenge statements to be false. This dooms Plaintiffs' fraud claim – and their other claims as well.

Plaintiffs similarly fail to allege the requisite knowledge of falsity for fraud. As to that issue, Plaintiffs assert that "Defendants were in a position to know the true quality and capability of their Products" and "knew or should have known that the scientific consensus is that UV-C lights in consumer-grade HEPA air purifiers offer no greater sanitary benefit than HEPA-filter air purifiers alone." FAC, ¶107. But Plaintiffs allege no ***facts*** indicating that Defendants knew that any of the identified product claims were false, and the foregoing conclusory allegations are patently insufficient to satisfy the heightened pleading requirement. *Vess*, 317 F. 3d. at 1106. To the extent Plaintiffs' allegations touch at all upon Defendant's knowledge, they concede that the product labeling shows that the claims were supported by "test[ing] with Staphylococcus Albus, and Escherichia Coli, Aspergillus Niger, and Phi-X174." *Id.*, ¶ 48. Plaintiffs do not, and could not, allege that Defendants did not actually conduct this testing, or that the testing that was conducted does not support the claims.

Plaintiffs also fail to allege that they visited Defendants' website and read and relied on the challenged representations in purchasing the Products, or to offer a plausible explanation as to how they relied upon the 2019 or 2020 GermGuardian website pages when making purchases at least two years later, in 2022 and 2023. These failures require dismissal. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing fraud claim where plaintiff failed to "specify when he was exposed to [the challenged ads] or which ones he found material," "which sales material he relied upon in making his decision," or generally "the who, what, when, where, and how of the misconduct alleged"). *See also Salazar v. Target Corp.*, (2022) 83 Cal.App.5th 571, 578 (plaintiff lacked standing to bring any false advertising claim based on Target's website because the plaintiff "does not allege that he visited the website or relied on it when deciding whether to purchase [the product])"; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306 (plaintiffs "must demonstrate actual

reliance on the allegedly deceptive or misleading statements" to have standing); *Tabler v. Panera LLC,* (N.D. Cal. Oct. 29, 2019) No. 19-cv-01646-LHK, 2019 WL 5579529, at *11 (granting dismissal where "[i]t is unclear which, if any, of the 'representative' advertisements described in the complaint Plaintiff actually relied upon before Plaintiff decided to purchase the unspecified Products").[23]

### E.   Plaintiffs' Express Warranty Claim Fails

To state a claim for breach of express warranty, a plaintiff must show "(1) [the seller] made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Corbett v. PharmaCare U.S., Inc*., 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021) (internal quotation and citation omitted). "To constitute a warranty and be actionable, the statement must be specific and unequivocal." *Id.* Here, Plaintiffs can point to no "specific and unequivocal" statement by Defendants that, assuming the truth of their factual allegations, would be proven to be false. Plaintiffs' express warranty claim should also be dismissed.

### F.   The Nationwide Class Allegations Should Be Stricken

Plaintiffs purport to assert their allegations on behalf of both nationwide and California consumers of the Products. FAC ¶¶ 82, 83. Any claims purportedly asserted on behalf of out-of-state putative class members should be stricken pursuant to Rule 12(f) under the principles established in *Bristol-Myers Squibb Co. v. Sup. Ct. Cal.*, 137 S.Ct. 1773 (2017), on grounds that

---

[23] Numerous other California federal courts have dismissed claims where the plaintiff "generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon." *In re Aris Cable Modem Consumer Litig*. (N.D. Cal. Jan. 4, 2018) No. 17-CV-01834-LHK, 2018 WL 288085, *8; *Pirozzi v. Apple Inc.* (N.D. Cal. 2012) 913 F.Supp.2d 840, 850 (dismissing complaint where plaintiff did not "specify when she was exposed to the statements or which ones she found material to her decisions to purchase"); *Felice v. Guardian Technologies LLC,* (N.D. Cal. April 4, 2024) No. 23-cv-04685-MMC, at *7 (dismissing CLRA, FAL and UCL claims because "plaintiffs do not, contrary to their argument, identify the particular statement(s) each read or heard before making his or her purchase and that bore on such decision, a deficiency fatal to plaintiffs' claims.").

the Court lacks personal jurisdiction over Defendants, both non-resident LLCs,[24] as to the claims of non-resident class members. The Court, in granting Defendants' motion to dismiss, did not address this issue, as it held that Plaintiffs' allegations failed to state any claim. *See* Order, fn. 7.

In *Bristol-Myers Squibb*, more than 600 plaintiffs, most of whom were not California residents, filed a civil action in California state court alleging a variety of state law claims caused by the drug Plavix. *Id.* at 1777. The California Supreme Court had used a "sliding scale approach to specific jurisdiction," under which "'[Bristol-Myers Squibb's] extensive contacts with California' permitted the exercise of specific jurisdiction 'based on a less direct connection between [its] forum activities and plaintiffs' claims than might otherwise be required.'" *Id.* at 1778. The majority based jurisdiction in the fact that the claims of nonresident plaintiffs were "similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Id.* at 1779. The U.S. Supreme Court reversed, stating: "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. The majority opinion did not "confront the question whether its opinion ... would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plai0ntiffs, not all of whom were injured there," *see id.* at 1789, n.4 (Sotomayor, J., dissenting), and "[t]he Ninth Circuit and the Supreme Court have yet to decide this issue." *King v. Bumble Trading, Inc.*, No. 18-CV-06868-NC, 2020 WL 663741, at *4 (N.D. Cal. Feb. 11, 2020).

In the wake of *Bristol-Myers Squibb*, courts have taken one of three approaches in considering whether the holding applies to class actions in federal court. One set of courts, including two circuit courts, held that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases. *See, e.g.*, *Mussat v. IQVIA, Inc.* (7th Cir. 2020) 953 F.3d 441, 445; *Lyngaas v.*

---

[24] Defendant Guardian Technologies LLC is a Delaware limited liability company, with its principal place of business in Ohio. *Id.* ¶ 10. Defendant Lasko Products, LLC is a Pennsylvania limited liability company, with its principal place of business in Pennsylvania. *Id.* ¶ 11.

*Ag* (6th Cir. 2021) 992 F.3d 412, 433. A second set of courts does not reject application of *Bristol-Myers Squibb* to class actions, but has opted to defer consideration of due process considerations until class certification, on the theory that since unnamed plaintiffs are merely potential class members who may never actually be joined if a class is never certified, it would be premature for a court to decide whether there is specific jurisdiction over the defendant as to their claims. *See, e.g.*, *Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293, 295-300 (D.C. Cir. 2020); *Noohi v. Kraft Heinz Company* (C.D. Cal., July 20, 2020, No. CV1910658DSFSKX) 2020 WL 5554255, at \*5; *Bugarin v. All Nippon Airways Co., Ltd.* (N.D. Cal. 2021) 513 F.Supp.3d 1172, 1187–1188.

    A third set of courts has held, most persuasively in the view of Defendants, that the same due process concerns that animated *Bristol-Myers-Squibb* necessarily apply to nationwide class actions in federal courts and there is no principled way to distinguish between the mass action in that case and class actions. In *Carpenter v. PetSmart*, 441 F. Supp. 3d 1028 (S.D. Cal. 2020), for example, Judge Cathy Ann Bencivengo granted defendant's motion to strike the class allegations to the extent they included non-California class members. The court found that although "the Supreme Court did not consider whether its holding in *Bristol-Myers Squibb* would apply to class actions… the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims." *Id.*, at 1035. *Carpenter* noted that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*, quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780. "The specific personal jurisdiction inquiry is 'defendant-focused,' with an emphasis 'on the relationship among the defendant, the forum, and the litigation.'" *Id.*, *quoting Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662 (9th Cir. 2018) (*quoting Walden*, 571 U.S. at 284). The court further emphasized Walden's command that "[j]urisdiction 'must arise out of contacts that the 'defendant himself' creates with the forum State.'" *Id.*, *quoting Walden*, 571 U.S. at 284.

    Numerous other courts have adopted the reasoning in *Carpenter*, holding that courts lack

jurisdiction over claims of out-of-state plaintiffs against out-of-state defendants that have no connection to the forum state. *See, e.g.*, *Stacker v. Intellisource, LLC* (D. Kan., June 28, 2021, No. 20-2581-JWB) 2021 WL 2646444; *Bostick v. General Motors, LLC* (C.D. Cal., July 22, 2020, No. 519CV02451VAPSPX) 2020 WL 13283478, at *5 ("[T]he Court also holds it may not exert personal jurisdiction over non-California putative class members…. [t]he additional due process safeguards afforded by the class action format, [citation], do not obviate this concern."); *Rivera v. Invitation Homes, Inc.* (N.D. Cal., Oct. 29, 2020, No. 18-CV-03158-JSW) 2020 WL 8910882, at *8 ("The growing weight of authority supports the conclusion that "*Bristol-Myers* applies to federal courts sitting in diversity," *quoting Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019)); *Pilgrim v. General Motors Company* (C.D. Cal. 2019) 408 F.Supp.3d 1160, 1166–1167 (*Bristol-Myers-Squibb* applies to federal court sitting in diversity); *See, e.g., Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) ("The Court therefore concludes that Bristol-Myers extends to class actions, and that Chavez is therefore foreclosed from representing either a nationwide and [sic] multistate class comprising non-Illinois residents in this suit."); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (dismissing claims arising out of out-of-state purchases "[b]ecause the only connection to [the forum state] is provided by [the named plaintiff's] purchase"); *see also Chizniak v. CertainTeed Corp.*, No. 117CV1075FJSATB, 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020) ("Like the other courts in this District, the Court interprets *Bristol-Myers Squibb* to extend to nationwide class actions and declines to exercise specific personal jurisdiction over Defendant CertainTeed with regard to the Out-of-State Plaintiffs' claims."); *cf. Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Myers Squibb* in a footnote and noting in dicta that the court "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."); *cf. In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due

1    process just the same as any other case."); *cf LeGrand v. Abbott Laboratories* (N.D. Cal. 2023) 655

2    F.Supp.3d 871, 884 ("California district courts considering the issue have largely determined that

3    named, out-of-state, class-action plaintiffs in cases based on diversity jurisdiction must establish

4    personal jurisdiction.").

5        The same principles apply here, and support striking the out-of-state class allegations

6    against Defendants, both of whom are non-resident LLCs whose principal place of business is

7    located outside of California. It is beyond dispute that Defendants are not subject to general

8    jurisdiction in California, leaving specific jurisdiction as the only possible basis for asserting

9    jurisdiction over the claims. *Carpenter,* 441 F. Supp. 3d at 1035, citing *Bristol-Myers Squibb*, 137

10   S. Ct. at 1780.  And since the claims of non-resident class members would not be subject to specific

11   personal jurisdiction if asserted as individual claims, it follows that there is not specific jurisdiction

12   as to those claims and they should be dismissed. *Id.*

13       **G.    Plaintiffs' Claim for Punitive Damages Must Be Dismissed**

14       Plaintiff's Prayer for Relief contains a request for punitive damages, but the FAC contains

15   no allegations on which a claim for punitive damages could possibly be recovered. Punitive

16   damages are only available under California law when a plaintiff proves "by clear and convincing

17   evidence that the defendant has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code, §

18   3294(a). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust

19   hardship in conscious disregard of that person's rights." Id., (c)(2).

20       The FAC is utterly devoid of allegations that Defendants subjected Plaintiffs to "cruel and

21   unjust hardship." *See generally* FAC. "Malice" is defined as "conduct which is intended by the

22   defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant

23   with a willful and conscious disregard of the or safety of others." Cal. Civ. Code, § 3294 (c)(1).

24   Again, the FAC contains no allegation that Defendants intended to injure Plaintiffs or anyone else,

25   nor that they willfully and consciously disregarded anyone's rights or safety (which is the only

26   appropriate way to describe these facts). Indeed, the FAC does not allege – nor can it allege – that

27   anyone was physically harmed in any way by the Products or that the Products were unsafe, or less

28   safe than any other product. Any claim for punitive damages is wholly unsupported by the

1 allegations in the FAC, and should be dismissed.

2 **IV.     CONCLUSION**

3        For the foregoing reasons, Defendants respectfully request that the Court grant their motion

4 to dismiss the Complaint in its entirety, and without leave to amend.

5

6 Dated:  May 9, 2024                          BRYAN CAVE LEIGHTON PAISNER LLP

7                                              By:   */s/ Daniel Rockey*
                                                     Daniel Rockey
8                                              Attorneys for Defendants
                                               Guardian Technologies LLC and Lasko Products
9                                              LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss/Strike Case
No. 3:23-Cv-04685-MMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

(United States District Court)

I hereby certify that on May 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/ Daniel Rockey*
Daniel Rockey